UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

TRUSTEES OF THE NEW JERSEY : CIVIL ACTION NO. 17-1153 (MLC)(TJB)
B.A.C. HEALTH FUND, *et al.*, :
: **MEMORANDUM OPINION**
    Plaintiffs, :
:
v. :
:
RDM CONCRETE & MASONRY LLC, :
:
    Defendant. :

**COOPER, District Judge**

This matter comes before the Court on a motion for default judgment against Defendant RDM Concrete & Masonry LLC ("RDM") by Plaintiffs: (1) Trustees of the New Jersey B.A.C. Health Fund (the "Health Fund"); (2) Trustees of the New Jersey B.A.C. Annuity Fund (the "Annuity Fund"); (3) Trustees of the B.A.C. Local 5 of New Jersey Pension Fund (the "Local 5 Pension Fund"); (4) Trustees of the New Jersey BM&P Apprentice and Education Fund (the "Apprentice Fund"); (5) Trustees of the Bricklayers & Trowel Trades International Pension Fund (the "International Pension Fund"); (6) Trustees of the International Masonry Institute (the "IMI"); and (7) Richard Tolson as Administrator of and on behalf of the B.A.C. Administrative District Council of New Jersey (the "Union") (collectively, "Plaintiffs"). (Dkt. 6.)[1] We have reviewed

---

[1] The Court will cite documents filed on the Electronic Case Filing System ("ECF") by referring to the docket entry numbers as "dkt." Pincites reference ECF pagination.

the parties' submissions, and decide the motion without oral argument. See L. Civ. R. 78.1(b). For the reasons that follow, we will grant the Plaintiffs' motion.

I. Background

This case arises out of RDM's alleged failure to meet its obligations under a Collective Bargaining Agreement ("CBA") between RDM and the Union. (Dkt. 1 at 5.) The CBA establishes the terms and conditions of employment for employees of RDM working as bricklayers, cement masons, plasterers, pointer caulkers, cleaners, fire proofers, stone masons, brick pavers, and exterior marble masons ("Covered Work"). (Id.) In particular, the CBA provides that RDM must make specified contributions to the Health Fund, the Annuity Fund, the Local 5 Pension Fund, the Apprentice Fund, the International Pension Fund, and the IMI (collectively, the "Funds") and forward specified dues check-offs and other contributions to the Union for each hour of Covered Work performed by RDM's employees. (Id.) This case arises out of work performed by RDM employees in May 2016 on a project in Jamesburg, New Jersey. (Id.) According to the Complaint, RDM failed to make $8,706.77 in required contributions to the Funds and failed to remit $952.41 in required dues check-offs to the Union in connection with that project. (Id.)

The Plaintiffs moved for entry of default after RDM failed to timely respond to the Complaint. (See dkt. 5.) The Clerk of the Court entered default in favor of the Plaintiffs in accordance with Fed. R. Civ. P. 55(a). (See entry following dkt. 5.) The Plaintiffs have now moved for default judgment against RDM in favor of the Funds for $8,706.77

(plus interest, liquidated damages, and attorneys' fees and costs), and in favor of the Union for $952.41. (Dkt. 1 at 7; dkt. 7.)

## II. Legal Standard

"Once a party has defaulted, the consequence is that the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." Teamsters Pension Fund of Phila. & Vicinity v. Am. Helper, Inc., No. 11-624, 2011 WL 4729023, at *2 (D.N.J. Oct. 5, 2011) (quoting DIRECTV, Inc. v. Pepe, 431 F.3d 162, 165 n.6 (3d Cir. 2005)). "The entry of a default judgment is largely a matter of judicial discretion, although the Third Circuit has emphasized that such 'discretion is not without limits, however, and [has] repeatedly state[d] [its] preference that cases be disposed of on the merits whenever practicable.'" Chanel, Inc. v. Gordashevsky, 558 F. Supp. 2d 532, 535 (D.N.J. 2008) (quoting Hritz v. Woma Corp., 732 F.2d 1178, 1181 (3d Cir. 1984)).

Prior to entering default judgment, the court must: "(1) determine it has jurisdiction both over the subject matter and parties; (2) determine whether defendants have been properly served; (3) analyze the complaint to determine whether it sufficiently pleads a cause of action; and (4) determine whether the plaintiff has proved damages." Moroccanoil, Inc. v. JMG Freight Grp. LLC, No. 14-5608, 2015 WL 6673839, at *1 (D.N.J. Oct. 30, 2015). Additionally, the Court must consider the following three factors: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." Chamberlain v. Giampapa, 210 F.3d 154, 164 (3d Cir. 2000); see also Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc., 175 F. App'x 519, 522 (3d Cir. 2006).

3

### III. Analysis

#### A. Jurisdiction

"Before entering a default judgment as to a party that has not filed responsive pleadings, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." HICA Educ. Loan Corp. v. Surikov, No. 14-145, 2015 WL 273656, at *2 (D.N.J. Jan. 22, 2015) (internal quotations omitted).

We find that we have subject matter jurisdiction over the Plaintiffs' claims under 29 U.S.C. § 1132(e) (granting federal district courts jurisdiction over ERISA claims); 29 U.S.C. § 185 (granting jurisdiction in the federal district where the labor organization maintains its principal office); and 28 U.S.C. § 1331 (granting "federal question" jurisdiction over actions arising under the Constitution, laws, or treaties of the United States). See Trustees of the New Jersey B.A.C. Health Fund v. Bryant Caulking & Waterproofing, Inc., No. 15-8359, 2017 WL 784944, at *2 (D.N.J. Mar. 1, 2017).

We also find that we have specific personal jurisdiction over RDM. Establishing specific jurisdiction involves a three-part inquiry: (1) whether the defendants purposefully directed their activities at the forum; (2) whether the litigation arises out of or relates to at least one of the contacts; and (3) whether the exercise of jurisdiction otherwise comports with traditional notions of fair play and substantial justice. O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 317 (3d Cir. 2007). As recounted in the Complaint, RDM is a New Jersey corporation with a principal place of business in New Jersey. (Dkt. 1 at 4.) The Covered Work giving rise to the Plaintiffs' non-payment claims occurred in New Jersey and involved workers from a union

4

headquartered in New Jersey. (Dkt. 1 at 5.) The undisputed facts show that Plaintiffs' claim and RDM's contacts with New Jersey are sufficient to establish specific jurisdiction, and the Court finds that allowing RDM to be sued in New Jersey does not offend traditional notions of fair play and substantial justice.

**B.  Service**

"Before the Court can enter default judgment, it must find that process was properly served on the Defendant[s]." Teamsters Pension Fund of Phila., 2011 WL 4729023, at *2. RDM is a corporation that may be served "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1)(B). According to a declaration from Plaintiffs' counsel and attached declaration of service, the Complaint was served on RDM on February 23, 2017, by serving Desiree Ciullo, the managing agent for the Defendant. (Dkt. 9 at 2; dkt. 9–2.) Accordingly, we conclude that RDM was properly served.

**C.  Sufficiency of Causes of Action and Damages**

The Plaintiffs allege the RDM breached the terms of the CBA and should be found liable to the Funds for $8,706.77 (plus interest, liquidated damages, and attorneys' fees and costs) and liable to the Union for $952.41. (Dkt. 1 at 7.) "To establish a breach of contract claim, a plaintiff has the burden to show that the parties entered into a valid contract, that the defendant failed to perform his obligations under the contract and that the plaintiff sustained damages as a result." Murphy v. Implicito, 392 N.J. Super 245, 265 (App. Div. 2007). Here, the Plaintiffs have adequately pleaded the elements of a

breach of the CBA. The Complaint sufficiently alleges the existence of the CBA, that RDM failed to remit funds as required by the CBA, and that the Plaintiffs were harmed by RDM's breach through nonpayment. (Dkt. 1 at 5–7.) A copy of the relevant agreements, together with signature pages, were attached as exhibits to the default motion. (Dkt. 8-1; dkt. 8-2; dkt. 8-3.)

The Plaintiffs submitted proof of damages supported by a declaration from Ken Crandall, who is responsible for collecting money owed to the Funds and the Union. (Dkt. 8.) Mr. Crandall attached his calculation for money owed to the Funds ($8,706.77) and the Union ($952.41), for a total of $9,659.18. (Dkt. 8 at 3; dkt. 8–4.)

The Plaintiffs also seek interest and liquidated damages on the amount owed to the Funds based on the terms of a Collection Policy incorporated into the CBA. (Dkt. 8 at 3–4.) The Collection Policy provides generally for a 10% interest rate per annum on delinquent payments, and a 15% interest rate per annum on delinquent payments owed to the International Pension Fund. (Dkt. 8-5 at 3.) Pursuant to those terms, Mr. Crandall attached interest calculations through April 20, 2017. (Dkt. 8–6.)[2] The Collection Policy further provides for liquidated damages of 20% of the amount of delinquent payment, which in this case is $1,741.35 (or 20% of $8,706.77). (Id.)

The Collection Policy also provides for the recovery of attorney's fees, and Plaintiffs' counsel submitted an additional declaration detailing the attorney's fees

---

[2] For interest calculations, the total damages sought by the Funds ($8,706.77) was subdivided into $5,321.66 owed to the International Pension Fund and $3,385.11 owed to the other funds. (Dkt. 8-6.) Updating those calculations through June 26, 2017 yields interest of $850.74 for the International Pension Fund and $361.62 for the other funds for a total of $1,212.36.

incurred in this case, which include $1,806.50 in attorney's fees and $475.31 in court fees and service fees for a total of $2,281.81. (Dkt. 9.) We find these fees to be reasonable under the circumstances.

### D.     Additional Factors

"Before imposing the extreme sanction of default judgment, district courts must make explicit factual findings as to (1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." Teamsters Pension Fund of Phila., 2011 WL 4729023, at *4 (quoting Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds, 250 F.R.D. 171, 177 (D.N.J. 2008)).

Here, all three factors weigh in favor of entering default judgment. First, considering that RDM has not responded in this matter, "Defendant[s] ha[ve] put forth no evidence or facts containing any information that could provide the basis for a meritorious defense." HICA Educ. Loan Corp., 2015 WL 273656, at *3. Additionally, there is nothing on the face of the Complaint indicating that a meritorious defense is available. Second, Plaintiffs have been prejudiced by RDM's failure to answer. Without a default judgment, "Plaintiff has no other means of seeking damages for the harm allegedly caused by Defendant[s]." Gowan v. Cont'l Airlines, Inc., No. 10-1858, 2012 WL 2838924, at *2 (D.N.J. July 9, 2012). Lastly, RDM's failure to answer, without providing any reasonable explanation, demonstrates its culpability in the default. See Days Inns Worldwide, Inc. v. Mangur LLC, No. 15-2027, 2016 WL 845141, at *4

7

(D.N.J. Mar. 4, 2016). These additional factors accordingly support our finding that default judgment is warranted in this case.

### E. Remedies

In considering the amount of damages, where the plaintiff seeks damages in a sum certain, the Court may rely upon detailed affidavits, without resorting to a hearing. Durant v. Husband, 28 F.3d 12, 15 (3d Cir. 1994); Golia v. IBCS Group, Inc., No. 14-2577, 2015 WL 1914652, at *4 (D.N.J. April 27, 2015). As noted above, Plaintiffs have submitted a detailed declaration from Ken Crandall regarding damages (dkt. 8.) and a separate declaration regarding attorney's fees (dkt. 9). Those declarations and supporting exhibits adequately support damages as follows:

- $8,706.77 owed to the Funds, of which:
    - $5,321.66 is subject to a 15% per annum interest rate;
    - $3,385.11 is subject to a 10% per annum interest rate
- $1,741.35 in liquidated damages owed to the Funds;
- $952.41 owed to the Union; and
- $2,281.81 in reasonable attorney's fees and costs.

## IV. CONCLUSION

For the reasons stated above, the Court will grant Plaintiffs' motion for default judgment and issue an appropriate Order.

      s/ Mary L. Cooper  
**MARY L. COOPER**  
United States District Judge

Dated: June 26, 2017